J-S23007-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LAMARR CLEMENTE, | : | |
| | : | |
| Appellant | : | No. 82 EDA 2014 |

Appeal from the Judgment of Sentence December 12, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0012419-2012

BEFORE: DONOHUE, SHOGAN and STRASSBURGER\*, JJ.

MEMORANDUM BY DONOHUE, J.:                **FILED MAY 15, 2015**

Lamarr Clemente ("Clemente") appeals from the December 12, 2013 judgment of sentence entered by the Philadelphia County Court of Common Pleas following his convictions of burglary, criminal conspiracy, criminal trespass and theft by unlawful taking.[1] The trial court sentenced him on December 12, 2013 to two concurrent terms of incarceration of two to four years, followed by two years of reporting probation. In this timely appeal, Clemente challenges the sufficiency of the evidence to support his convictions of burglary, conspiracy and trespass. Clemente's Brief at 3. After careful review, we affirm.

Appellate review of a challenge to the sufficiency of the evidence is de novo. ***Commonwealth v. Rushing***, 99 A.3d 416, 420 (Pa. 2014). "[O]ur

---

[1] 18 Pa.C.S.A. §§ 3502(a)(2), 903, 3503(a)(1)(ii), 3921(a).

\*Retired Senior Judge assigned to the Superior Court.

scope of review is limited to considering the evidence of record, and all reasonable inferences arising therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner." *Id.* at 420-21. "The Commonwealth may sustain its burden by means of wholly circumstantial evidence." ***Commonwealth v. Martin***, 101 A.3d 706, 718 (Pa. 2014) (citation and quotation omitted). "Further, we note that the entire trial record is evaluated and all evidence received against the defendant is considered, being cognizant that the trier of fact is free to believe all, part, or none of the evidence." *Id.* It is for the finder of fact to pass upon the credibility of the witnesses and weight of the evidence presented. ***Commonwealth v. Melvin***, 103 A.3d 1, 40 (Pa. Super. 2014).

The trial court provided the following summary of the evidence presented at the October 7, 2013 bench trial, viewed in the light most favorable to the Commonwealth:

> On August 13, 2012, at approximately 8:45 a.m., Richard S. Giliberti, a construction foreman, was driving by one of his job sites on 3416 Sydenham Street. N.T.[,] 10/7/13, [at] 16-17, 19. Mr. Giliberti was approximately 40-50 feet away from the site when he noticed [Clemente] and a second person standing on the top of the deck of the property. [*Id.* at] 17, 20-22. Mr. Giliberti observed that the second person was holding a threshold and another unknown item while standing on top of the deck. [*Id.* at] 27. Both [Clemente] and the second individual saw Mr. Giliberti watch them. [*Id.* at] 23. As Mr. Giliberti exited his car, [Clemente] began to walk off the deck, carrying a can of spackle and a second threshold. [*Id.* at] 22-23, 25. The other

individual left the threshold and an unknown item on top of the deck. [*Id.* at] 25-26, 36. [Clemente] and the second person walked down the handicap ramp. *Id.* [Clemente] left the can of spackle and threshold at the bottom of the handicap ramp, and both men walked away from the property together. [*Id.* at] 24-26, 37, 39. Mr. Giliberti called the police. [*Id.* at] 23.

Following their departure, Mr. Giliberti walked to the deck and observed that a door had been kicked in from an apartment that was used to store construction materials. [*Id.* at] 27. He did not touch anything as he walked up the ramp and into the property. *Id.* Mr. Giliberti entered the apartment and observed [that] a chop saw and dishwasher were missing. [*Id.* at] 29. Mr. Giliberti visited the property approximately two weeks earlier. [*Id.* at] 27, 34. At that time, the door was intact and Mr. Giliberti secured the premises upon departure. [*Id.* at] 27, 34. At the time of that visit, the chop saw and dishwasher were present. [*Id.* at] 34. The dishwasher and chop saw were never recovered. [*Id.* at] 37.

Mr. Giliberti observed the second person return and enter a gray sedan. [*Id.* at] 24, 40, 44. He drove past Mr. Giliberti. [*Id.* at] 25. Mr. Giliberti was unable to see whether the chop saw or dishwasher were in the car. [*Id.* at] 48.

Police Officers Agront and Collins arrived approximately fifteen minutes after Mr. Giliberti's call. [*Id.* at] 26, 51. Police Officer Agront contacted a fingerprint technician to process the scene. [*Id.* at] 51. No one touched any of the items carried by [Clemente]. [*Id.* at] 52. Police Officer Drobonick arrived and processed the premises. [*Id.* at] 55-56. He took pictures of the scene and obtained latent fingerprints of [Clemente] from the door threshold at the bottom of the ramp. [*Id.* at] 56-57, 67-68. [Clemente] was not employed by the construction company renovating the building[,] nor did he have

permission to be on the premises. [*Id.* at] 29, 65-66.

Trial Court Opinion, 6/30/14, at 2-4.

We begin with the sufficiency of the evidence to support Clemente's convictions of burglary and criminal trespass. For Clemente to be convicted of burglary, the Commonwealth had to prove, in relevant part that, "with the intent to commit a crime therein, [Clemente] … enter[ed] a building or occupied structure, or separately secured or occupied portion thereof that is adapted for overnight accommodations in which at the time of the offense no person is present[.]" 18 Pa.C.S.A. § 3502(a)(2). For criminal trespass, the Commonwealth had to establish that Clemente, "knowing that he [was] not licensed or privileged to do so, … [broke] into [a] building or occupied structure or separately secured or occupied portion thereof." 18 Pa.C.S.A. § 3503(a)(1)(ii).

Clemente asserts that the evidence was insufficient to convict him of these crimes, as "the testimony failed to show that [Clemente] ever broke into or entered the apartment in question as the eyewitness only observed [Clemente] outside [of] the apartment, which had been left unattended for at least the two preceding weeks." Clemente's Brief at 11. According to Clemente, the only thing the Commonwealth proved is that he was present outside of the property and "briefly in possession of items formerly in the apartment." *Id.* at 13. Because it had been several weeks since either the

owner or the construction foreman had been to the property, and the property had been burglarized five or six times previously, Clemente argues that his mere possession of the spackle and threshold do not permit an inference that he broke into the property and removed the items from inside. *Id.* at 14-16. Clemente states that he "clearly" did not take the dishwasher and chop saw that were missing from the property, as he "left on foot empty-handed," and his coconspirator could not have concealed the dishwasher in his car, and thus, someone else must have kicked in the door during a prior, undetected burglary. *Id.* at 16. Clemente points to his own testimony that the threshold and spackle were outside of the apartment and asserts that this "un-rebutted explanation" adequately proved that he did not break into the apartment. *Id.* at 17.

The trial court found as follows:

> Here, the evidence showed that [Clemente], who did not have permission to be on the premises, entered the apartment where building materials were stored and removed items. Mr. Giliberti observed the door leading into the apartment kicked in. [Clemente] was observed standing on the deck of the property with another person holding items that had been stored inside the property. [Clemente] was observed walking off with a can of spackle and a door threshold. He ultimately left the items at the bottom of the handicap ramp where his fingerprints were recovered from the door threshold.

Trial Court Opinion, 6/30/14, at 5.

The record, viewed in the light most favorable to the Commonwealth as our standard of review requires, supports the trial court's conclusion. It is uncontested that Clemente was at the property in question, holding two items that had previously been inside of the apartment. N.T., 10/7/13, at 27. The door to the apartment was kicked in. *Id.* Mr. Giliberti testified that the last time he was at the apartment, approximately two weeks prior to the burglary in question, he secured all of the doors and ensured they were locked and that the door was intact at that time. *Id.* Clemente was not invited or permitted to enter the premises. *Id.* at 66. Clemente does not claim, and the record does not support a finding, that he was unaware that he was not invited or permitted to enter the building.

Although Clemente testified that he obtained the threshold and spackle from outside of the apartment, having found them among some boxes and other trash, *see id.* at 78, no other witness corroborated that testimony. Nor was his testimony "un-rebutted," as Clemente claims. To the contrary, Mr. Giliberti testified that when he arrived and observed Clemente and his coconspirator on the day in question, there was no trash on the property and that the items Clemente and his coconspirator dropped on the ramp were inside of the apartment prior to this incident. *Id.* at 27, 36. Officer Agront likewise testified that he did not remember seeing anything outside of the apartment other than the items Clemente and his coconspirator had possessed. *Id.* at 53.

Furthermore, there is no evidentiary support for Clemente's contention that he and his coconspirator could not have stolen the dishwasher and chop saw. Mr. Giliberti testified that he did not look inside the trunk of Clemente's coconspirator's vehicle, and could not see what was in the backseat because the driver of the car "peeled out" and sped past Mr. Giliberti. *See id.* at 41, 48. It is therefore entirely possible that the dishwasher and chop saw were in the car, and just not seen as Clemente's coconspirator drove away.

Clemente cites several cases in support of the contention that where some time has passed between the occurrence of a crime and the defendant's apprehension, mere possession of stolen property does not necessarily permit an inference that the defendant was responsible for the underlying crime. *See* Clemente's Brief at 14-16. All of the cases upon which he relies relate to a defendant being found in possession of stolen property after the underlying crime was committed.[2] Thus, Clemente's

---

[2] *See, e.g., Commonwealth v. McFarland*, 308 A.2d 592, 595 (Pa. 1973) ("[T]here is not sufficient evidence to sustain the inference that appellants participated in the burglary and larceny merely because the stolen items were found in their possession over eleven months later."); *Commonwealth v. Matthews*, 632 A.2d 570, 572 (Pa. Super. 1993) (finding insufficient evidence of mens rea required for conviction of receiving stolen property where the defendant was found driving a stolen car three days after its theft and the defendant provided an unrebutted explanation for his belief that he was in lawful possession of the car); *but see, e.g., Commonwealth v. Price*, 420 A.2d 527, 529 (Pa. Super. 1980) (finding the evidence sufficient to support conviction of burglary based on testimony that the defendant and another man were observed riding one of the stolen

argument requires that we assume that the items found in his possession were outside of the apartment, as he claimed during his testimony. In other words, Clemente would have us view the facts in the light most favorable to him and reverse the trial court's credibility determinations. As stated above, our standard of review prohibits us from doing either. *See Rushing*, 99 A.3d at 420-21; *Melvin*, 103 A.3d at 40.

Clemente was caught red-handed with items that had been inside of the apartment while standing on the deck of the property, with the door kicked in. He was not invited or permitted to be inside of the apartment. Testimony by the Commonwealth's witnesses contradicted Clemente's claim that he found the items outside of the apartment, and the trial court found the Commonwealth's witnesses credible. Under these circumstances, the Commonwealth, through the presentation of circumstantial evidence, satisfied its burden of proving that Clemente was criminally responsible for burglary and trespass. *See Martin*, 101 A.3d at 718.

Turning to his conviction of conspiracy, Clemente asserts, "the testimony merely showed that there was another person present, but not that [Clemente] entered into an agreement with him to commit a crime." Clemente's Brief at 20. Clemente states that he was simply outside of the apartment at the same time as the other person and did not interact with

---

motorcycles and the defendant was in possession of rolled coins from the burglarized store ninety minutes after the burglary and three miles from the store, despite the defendant providing a contrary explanation).

him, giving rise only to a finding of a "mere association" between the two and the "happening of a crime in which several people participate," neither of which proves a conspiratorial relationship. *Id.* at 23.

The trial court found that the "conduct and circumstances" of Clemente and the other person gave rise to the inference of a conspiracy. Trial Court Opinion, 6/30/14, at 7. Based upon Clemente's and the other individual's presence on the property together, both holding items from inside of the apartment, and then walking away together, the trial court concluded that the evidence was sufficient for a conspiracy conviction. *Id.*

The Pennsylvania Crimes Code defines conspiracy as follows:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). "No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired." 18 Pa.C.S.A. § 903(e).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished.

> Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt.

*Melvin*, 103 A.3d at 42-43 (citation omitted).

As stated hereinabove, the evidence presented sufficiently, albeit circumstantially, proved that Clemente and another individual trespassed into and burglarized the apartment. The record further reflects that Clemente and this other individual were standing together on the deck of the apartment, where the door had been kicked in, and each was holding a threshold and another item that had been inside of the apartment. N.T., 10/7/13, at 20, 23, 25. When Mr. Giliberti arrived at the property, the unidentified person followed Clemente down the ramp from the apartment onto the sidewalk. *Id.* at 22-23. Clemente and the other person walked away from the scene together, first traveling south on Sydenham Street and then turning east onto Ontario Street. *Id.* at 23-24.

Based upon the conduct of Clemente and the other person as well as the overt acts performed by each of them, the Commonwealth sufficiently

proved that there existed "a common understanding … that a particular criminal objective be accomplished," and "a shared criminal intent." **Melvin**, 103 A.3d at 42-43. We therefore agree with the trial court that Clemente's conspiracy conviction was supported by sufficient evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/2015